## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLARENCE J. KIRK,** | : | **CIVIL NO. 1:CV-11-00665** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **DR. RUSSELL and** | : | |
| **NURSE PENDLETON,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Clarence J. Kirk, an inmate currently confined at the State Correctional Institution in Pittsburgh, Pennsylvania, initiated this civil rights action with a complaint filed pursuant to the provisions of 42 U.S.C. § 1983 on April 11, 2011, as amended January 26, 2012. (Doc. 29.) Named as Defendants are Nurse Pendleton and Gary D. Russell, M.D., two medical providers at Plaintiff's former place of confinement, the Wyoming County Correctional Facility ("WCCF") in Tunkhannock, Pennsylvania. In his amended complaint, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs with respect to injuries he sustained in April 2009.

Presently before the court are two motions for summary judgment, filed by Defendants Nurse Pendleton and Dr. Russell. (Docs. 106 & 109.) In both motions, Defendants argue that Plaintiff has failed to state a claim against them for deliberate

indifference to his serious medical needs.  For the reasons set forth below, the motions for summary judgment will be granted.

## I.    Background

### A.    Allegations in the Amended Complaint

In the amended complaint, Plaintiff makes the following allegations.  On April 17, 2009,[1] while proceeding from the second-tier level to the lower level day room at WCCF, Plaintiff tripped on a metal strip protruding on the steps.  (Doc. 29 ¶¶ 5, 6.) He fell down approximately eight (8) to ten (10) steps and landed on his left shoulder and middle back, and twisted his ankle.  (*Id.* ¶ 7.)  The second shift sergeant, a Sergeant Smith, wrote an incident report, and Plaintiff submitted a sick call slip to the medical department, presumably that same day.  (*Id.* ¶ 8.)

On April 23, 2009, Nurse Pendleton called Plaintiff to the medical department. (*Id.* ¶ 9.)  Plaintiff alleges that Nurse Pendleton was "personally involved via, ignoring

---

[1]  There appears to be some dispute over the actual date of the incident at issue in this case, as between April 17 or 19, 2009.  In the court's memorandum and order addressing previous motions for summary judgment, the court accepted April 19, 2009 as the date of the incident.  (*See* Doc. 74.)  However, in the filings submitted in connection with the instant motions for summary judgment, the parties appear to have settled on April 17, 2009 as the date of the incident.  (*See* Docs. 107, 110, 114.)  As a result, the court will accept April 17, 2009 as the date of the incident at issue in this case.

plaintiff's cry of excrutiating [sic] pain," presumably during the time between the submission of the sick call slip and his visit to the medical department.  (*Id*. ¶ 9.) Upon examination, Nurse Pendleton gave Plaintiff an ace bandage and velcro-strip sandals with an ice bag.  (*Id*. ¶ 10.)

Plaintiff next alleges that "eventually" Dr. Russell examined him "only after further complaints of pain and suffering[,] continuing delay and chronic care." (*Id*. ¶ 11.)  He also alleges that Dr. Russell was "personally involved via, ignoring plaintiff's chronic suffering."  (*Id*.)  Dr. Russell ordered an x-ray of Plaintiff's right shoulder, even though Plaintiff had complained to him of pain in his left shoulder.  (*Id*. ¶ 12.) When Plaintiff asked Dr. Russell to take an x-ray of his ankle and back, Dr. Russell responded, "We're not talking about that now."  (*Id*. ¶ 13.)  Dr. Russell then asked Plaintiff if he believed in God, and when Plaintiff responded that he did, Dr. Russell stated, "Pray for a healing!"  (*Id*. ¶ 14.)

Thereafter, Plaintiff continued to submit sick call requests to Nurse Pendleton and Dr. Russell, but they were ignored.  (*Id*. ¶ 15.)  However, on August 12, 2009, Plaintiff was transported to Geisinger Medical Center for care.  (*Id*. ¶ 16.)  Plaintiff alleges that he continues to suffer from severe shoulder, ankle, and back injuries.  (*Id*.)

**B.** **Facts**

In support of their motions for summary judgment, Defendants Nurse Pendleton and Dr. Russell submitted statements of material facts. (Docs. 108 & 111.) Plaintiff has not filed a counter statement of material facts. As a result, the court will deem Defendants' statements of material facts unopposed. *See* M.D. Pa. L.R. 56.1. At all times material, Nurse Pendleton was a Commonwealth-licensed nurse employed by WCCF, (Doc. 108 ¶ 2), and Dr. Russell was a family physician licensed to practice medicine in Pennsylvania, (Doc. 111 ¶ 2). With respect to notice of Plaintiff's need for medical care after the April 17, 2009 fall, both Defendants assert that WCCF's Warden had the ultimate control over whether an inmate was permitted to be seen by Nurse Pendleton. (Doc. 108 ¶ 3; Doc. 111 ¶ 3.) Specifically, Dr. Russell asserts that the "prison Warden and the Lieutenant at the prison did what they wanted to do with the medical request forms from inmates." (Doc. 111 ¶ 4) (citing Doc. 108-1 at 40, Kirk Dep.). He states that the Warden would forward an inmate's medical request form to Nurse Pendleton, who in turn would contact Dr. Russell if necessary. (*Id.* ¶¶ 5, 7.) He adds that the reason he eventually saw Plaintiff was because he was contacted by Nurse Pendleton, not directly by Plaintiff. (*Id.* ¶ 6.)

Further as to notice, Nurse Pendleton asserts that the Warden and Lieutenant made the determination that she would receive medical requests from inmates, and that therefore Plaintiff's alleged inability to receive medical care was not controlled by her, but rather by the Warden and Lieutenant. (Doc. 108 ¶¶ 6, 7.) For her part, Nurse Pendleton asserts that she never denied Plaintiff access to medical care. To the contrary, Nurse Pendleton claims that when she received Plaintiff's medical request forms, he was provided with medical care. (*Id.* ¶¶ 4, 8.) Further, in his deposition taken for this case, Plaintiff had the following exchange with Nurse Pendleton's counsel:

> Q: You indicated earlier that when Nurse Pendleton would receive the medical request form, you would receive medical care, correct?
>
> A: If she received them, yes.
>
> Q: Okay. So when she received them, you received the care that you requested?
>
> A: When she received them, yes.

(Doc. 108-1 at 15, Kirk Dep.) Nurse Pendleton also claims that although Plaintiff had the opportunity to speak with her outside of scheduled visits to the nurse's office, he never informed her that he had made requests for medical care which were ignored. (Doc. 108 ¶ 11.)

Both Defendants assert that Plaintiff never mentioned having an issue with his left shoulder in any of the medical request forms received by Nurse Pendleton. (Doc. 108 ¶ 5; Doc. 111 ¶ 8.)

Turning to Plaintiff's injuries and subsequent medical care, Defendants assert the following. Initially, Nurse Pendleton notes that prior to his incarceration, Plaintiff slid off a roof and received twenty-six (26) stitches on his head. (Doc. 108 ¶ 9.) As a result of this fall, Plaintiff also injured his neck and back. (*Id.* ¶ 10.)

Directly after the fall at issue in this case, Plaintiff reported it to Sergeant Smith, who prepared a report dated April 17, 2009. (*Id.* ¶ 22.) The report indicates that Plaintiff's ankle was swollen, that he was given ice and told to keep the ankle elevated, and that he was offered a move to a lower level on the cell block.[2] (*Id.* ¶ 23.) A second incident report was prepared by a Correctional Officer ("CO") Marbaker and dated April 20, 2009.[3] (*Id.* ¶ 25.) This incident report notes that Plaintiff showed

---

[2] Plaintiff agrees that the April 17, 2009 report is an accurate assessment of his interaction with Sergeant Smith. (Doc. 108 ¶ 24.)

[3] Nurse Pendleton notes that CO Marbaker was incorrectly identified as Marv Baker in a deposition transcript. (Doc. 108 ¶ 25.)

his ankle to CO Marbaker and complained of pain in the ankle.[4]  (*Id.* ¶ 26.)  Neither of these incident reports mentions any issue with Plaintiff's back or shoulder.  (*Id.* ¶ 28.)

When Nurse Pendleton first saw Plaintiff on April 21, 2009, four days after the April 17, 2009 fall, she indicated in her report that his ankle was swollen and discolored, but saw no evidence of bruising or marks on his back.[5]  (*Id.* ¶ 12.)  Also, she gave him an ace bandage, discussed referring him for an ankle x-ray with Dr. Russell, who subsequently determined that an x-ray was not warranted at that time.[6] (Doc. 108-2 at 10-11, Pendleton Dep.)  In another report dated April 24, 2009, Nurse Pendleton indicated that Plaintiff could move his arms well, although he complained of stiffness and soreness in his shoulder and right foot.  (Doc. 108 ¶ 13.)  Plaintiff never indicated which shoulder he had injured.  (*Id.* ¶ 14.)

---

[4]  Plaintiff agrees that the incident report is an accurate record of what he told CO Marbaker.  (Doc. 108 ¶ 27.)

[5]  In her deposition, Nurse Pendleton stated that she was not working at WCCF when Plaintiff's fall occurred on April 17, 2009, but she was called at home on that date.  (Doc. 108-2 at 8, Pendleton Dep.)  She directed treatment for Plaintiff according to the institution's protocol: "Basically the office would call and tell me so-and-so twisted his ankle or something like that.  I'll say, elevate it, put ice on it, and give him some ibuprofen or Tylenol, whatever the case may be." (*Id.* at 9.)  Further, Nurse Pendleton examined Plaintiff on the day she returned to work, April 21, 2009.  (*Id.*)

[6]  In her disposition notes from the April 21, 2009 examination, Nurse Pendleton noted that she would refer Plaintiff for an x-ray.  (Doc. 108-2 at 27.)

Dr. Russell saw Plaintiff for the first time on July 13, 2009, after being asked to examine him for the injury to his ankle. (Doc. 111 ¶ 9; Doc. 108-3 at 7-8, Russell Dep.) At that time, Plaintiff did not complain of any left shoulder or back injury. (Doc. 111 ¶ 9; Doc. 108-3 at 8.)

Nurse Pendleton next received a request for medical care from Plaintiff on July 29, 2009, after which she contacted Dr. Russell.[7] (Doc. 108 ¶¶ 15, 16.) This request was the only one received by Nurse Pendleton that mentioned either Plaintiff's back or shoulder. (*Id*. ¶ 29.) Specifically, it stated, "My back, shoulders, neck are still hurting from my fall 4-19-09. Could I please get some x-rays?" (Doc. 108-1 at 73, Ex. Kirk-6.) In the section titled, "To Be Completed by Administration," the "action taken" states, "States pain - in shoulder & neck - lower back - wants x-rays." (*Id*.)

Dr. Russell saw Plaintiff the next day, July 30, 2009. (Doc. 108 ¶ 16; Doc. 111 ¶ 10.) He noted that Plaintiff complained of a right shoulder injury and ordered an x-ray of the right shoulder based on Plaintiff's complaints. (Doc. 108 ¶ 17; Doc. 111 ¶ 10; Doc. 108-3 at 33.) The x-ray of the right shoulder was completed in August 2009, but Plaintiff never told Dr. Russell that the wrong shoulder had been x-rayed. (Doc.

---

[7] Nurse Pendleton asserts that she was not provided with any further reports of Plaintiff's medical issues after the April 24, 2009 evaluation and the July 29, 2009 medical request. (Doc. 108 ¶ 15.)

111 ¶ 11.)  Rather, Dr. Russell asserts that Plaintiff only informed a Lieutenant

Howell and Sergeant Rupture, along with "other inmates" that the wrong shoulder had

been x-rayed.  (*Id*.)  In his deposition, Plaintiff stated that he told the x-ray technicians

that they were taking x-rays of the wrong shoulder, but they responded that the right

shoulder was ordered to be x-rayed.  (Doc. 108-1 at 37, Kirk Dep.)  He also stated that

he told the same to a nurse at the doctor's office.  (*Id*. at 38.)  Further, Plaintiff stated

that he submitted a medical request form after August 2009 about x-rays for his ankle,

back, and left shoulder, but did not have any record of sending that request and did not

know if it was ever received by Nurse Pendleton.  (*Id*. at 39-40.)

In addition, both Defendants assert that Plaintiff was able to request pain

medication while he was an inmate at WCCF.  (Doc. 108 ¶ 30; Doc. 111 ¶ 16.)  He

was never denied pain medication when he requested it from WCCF.  (Doc. 108 ¶ 30;

Doc. 111 ¶ 17.)  In addition, the record of pain medication distributed to Plaintiff by

WCCF indicates that Plaintiff only received pain medication intermittently after the

incident.[8]  (Doc. 108 ¶ 31; Doc. 111 ¶ 18.)  Further, Plaintiff admits that he did receive

pain medication after the April 2009 fall.  (Doc. 108-1 at 31.)

Defendants also submit the following facts.  While incarcerated at WCCF,

Plaintiff worked as a Block Cleaner.  (Doc. 108 ¶ 18; Doc. 111 ¶ 13.)  His duties

included wiping down phones, mopping floors, and sweeping.  (Doc. 108 ¶ 19; Doc.

111 ¶ 14.)  Plaintiff continued to work as a Block Cleaner after the April 2009 fall.

(Doc. 108 ¶ 20; Doc. 111 ¶ 15.)  He never missed any work as a result of the incident

or due to any other medical reason.  (Doc. 108 ¶ 21; Doc. 111 ¶ 15.)

## C.   **Procedural History**

The relevant procedural history is as follows.  On April 11, 2011, Plaintiff filed

a complaint against several prison officials and medical care providers at WCCF.

(Doc. 1.)  On April 25, 2011, the court issued an order directing service of the

complaint.  (Doc. 6.)  Defendant Dr. Russell filed a motion to dismiss on June 9, 2011.

(Doc. 12.)  However, prior to filing a brief in support of that motion to dismiss,

Plaintiff filed an amended complaint.  (Doc. 13.)  As a result, the court issued an order

---

[8]  In his deposition, Plaintiff admitted to receiving pain medication (Tylenol or
ibuprofen) on the following dates: April 25-30, 2009; May 1-6, 2009; May 15, 21, 26, and 29, 2009;
June 13, 2009; one day in August 2009; October 10, 12, 17, 18, and 28, 2009; three days in
December 2009; two days in January 2010; three days in February 2010; four days in March 2010;
six days in May 2010; four days in June 2010; and one day in July 2010.  (Doc. 108-1 at 33-36.)

deeming moot Defendant Dr. Russell's motion to dismiss.  (Doc. 15.)  Thereafter,

Defendant Dr. Russell and the other Defendants filed motions to dismiss the amended

complaint.  (Docs. 16 & 17.)  After the motions were ripe for disposition, the court

issued a memorandum and order granting in part and denying in part the motions, and

granted Plaintiff leave to file an amended complaint.  (Doc. 26.)

Plaintiff filed his amended complaint on January 26, 2012.  (Doc. 29.)  Nurse

Pendleton filed an answer on February 21, 2012, as amended on February 22, 2012.

(Doc. 36.)  Dr. Russell filed an answer on April 4, 2012.  (Doc. 37.)  On April 9, 2012,

the court issued an order setting case management deadlines for the case.  (Doc. 39.)

Thereafter, on July 9, 2012, Nurse Pendleton and Dr. Russell filed separate motions

for summary judgment.  (Docs. 41 & 45.)  Following responsive and reply briefing, on

January 28, 2013, the court issued a memorandum and order granting in part and

denying in part the motions.  (Doc. 74.)  With respect to Nurse Pendleton, the court

granted her motion as to Plaintiff's claim regarding his ankle injury, but denied it as to

his claim regarding his back and left shoulder injuries.  (*See id*.)  With respect to Dr.

Russell, the court granted his motion as to Plaintiff's claims regarding his ankle and

back injuries, but denied it as to Plaintiff's claims regarding his left shoulder injury.

(*See id*.)

On January 31, 2013, the court issued an order setting a trial date of April 29, 2013. (Doc. 75.) However, on March 9, 2013, Plaintiff filed a motion to reopen discovery. (Doc. 76.) On April 5, 2013, after a telephonic conference held on that date with all parties, the court issued an order granting the motion to reopen discovery and set new deadlines for the completion of discovery. (Doc. 101.) The court further ordered that dispositive motions as to issues arising from the expanded discovery be filed no later that June 28, 2013. (*Id.*) In addition, a pretrial conference was scheduled for September 19, 2013, and a new trial date of September 23, 2013 was established. (*Id.*)

On June 28, 2013, both Defendants filed separate motions for summary judgment. (Docs. 106 & 109.) After the court granted him an extension of time, (*see* Doc. 113), Plaintiff filed a brief in opposition on August 12, 2013. (Doc. 114.) Thus, the motions for summary judgment (Docs. 106 & 109) are now ripe for disposition.

## II.    **Standard of Review**

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for granting a motion for summary judgment. Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id*. When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005), *cert. denied*, 546 U.S. 1094 (2006).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.    **Discussion**

In the instant motions, both Defendants Nurse Pendleton and Dr. Russell argue that Plaintiff has failed to establish that they were deliberately indifferent to his serious medical needs. The court notes that, following its disposition of the previously-filed motions for summary judgment (*see* Doc. 74), the issues remaining in this case are as follows: (1) whether Nurse Pendleton was deliberately indifferent to Plaintiff's serious medical needs relating to his back and left shoulder injuries, and (2)

whether Dr. Russell was deliberately indifferent to Plaintiff's serious medical needs relating to his left shoulder injury. After setting forth the applicable standard for deliberate indifference to serious medical needs, the court will separately address Plaintiff's claims as to both Defendants.

A Section 1983 claim based on a violation of the Eighth Amendment's prohibition of unnecessary and wanton infliction of pain arises where prison officials or doctors exhibit deliberate indifference to serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim will arise from the deliberate indifference of (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment once it is prescribed. *Id.* at 104-05. A deliberate indifference claim has two components: (1) an objective component under which the plaintiff must show that denial of care itself was serious or that it had serious consequences; and (2) a subjective component under which the plaintiff must show that the defendant has a sufficiently culpable state of mind. *See Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize

the necessity for a doctor's attention." *Mines v. Levi*, 2009 WL 8390011, at *7 (E.D.

Pa. Mar. 26, 2009) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d

Cir. 1991)); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d

Cir. 1987). "[I]f unnecessary and wanton infliction of pain results as a consequence of

denial or delay in the provision of adequate medical care, the medical need is of the

serious nature contemplated by the Eighth Amendment." *Young v. Kazmerski*, 226 F.

App'x 191, 193 (3d Cir. 2008) (quoting *Lanzaro*, 834 F.2d at 347).

Deliberate indifference occurs where a defendant: (1) knows of a prisoner's

need for medical treatment but intentionally refuses to provide it; (2) delays necessary

medical treatment based on a non-medical reason; (3) prevents a prisoner from

receiving needed or recommended medical treatment; or (4) persists in a particular

course of treatment "in the face of resultant pain and risk of permanent injury." *Rouse

v. Allen*, 182 F.3d 192, 197 (3d Cir. 1999). However, "claims of negligence or

medical malpractice, without some more culpable state of mind, do not constitute

'deliberate indifference.'" *Id.* (citing *Estelle*, 429 U.S. at 105, for the proposition that,

"in the medical context, an inadvertent failure to provide adequate medical care cannot

be said to constitute 'an unnecessary and wanton infliction of pain' or to be

'repugnant to the conscience of mankind.'"); *see also Durmer v. O'Carroll*, 991 F.2d

16

64, 69 (3d Cir. 1993) (finding that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation); *Lanzaro*, 834 F.2d at 346 (stating mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim).

Finally, the deliberate indifference test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Little v. Lycoming Cnty.*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (citing *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

### A.    Deliberate Indifference Claim Against Nurse Pendleton

As stated above, remaining at issue here is whether Nurse Pendleton was deliberately indifferent to Plaintiff's back and left shoulder injuries. Nurse Pendleton argues that summary judgment should be granted in her favor because Plaintiff has failed to establish both the objective and subjective elements of a deliberate indifference claim. Upon review, the court agrees with Nurse Pendleton and summary judgment will be granted in her favor.

Nurse Pendleton first argues that Plaintiff has failed to show that his medical needs with respect to his injuries were sufficiently serious. Here, the record reveals that despite the injuries occurring in April 2009, Nurse Pendleton did not receive a direct request for medical care from Plaintiff regarding his back and shoulder prior to July 29, 2009. When Nurse Pendleton first saw Plaintiff on April 21, 2009, four days after the fall, she noted that Plaintiff's ankle was swollen and discolored, but saw no evidence of bruising or marks on his back. She treated the ankle injury, and Plaintiff admits that he received pain medication after the fall. When Nurse Pendleton saw Plaintiff again on April 24, 2009, Plaintiff could move his arms well, but complained of stiffness and soreness in his shoulder and right foot. However, Plaintiff did not indicate which shoulder was injured, and Plaintiff admits that he did receive pain medication during that time. When Nurse Pendleton received a request for medical care referring to shoulder and back injuries nearly three months later on July 29, 2009, she contacted Dr. Russell, who examined Plaintiff the next day, July 30, 2009. Notably, in the two incident reports filed directly after the fall by Sergeant Smith and CO Marbaker, respectively, no injuries to Plaintiff's back and shoulder were mentioned. Further, Plaintiff admitted that he had the opportunity to speak with Nurse Pendleton outside of scheduled visits to the nurse's office, but the record shows that

he did not inform her of injuries to his back and shoulder until July 29, 2009, at which time she ordered evaluation by Dr. Russell immediately. Finally, Plaintiff continued to work as a Block Cleaner after the April 2009 fall without missing any scheduled work. In light of this evidence, the court agrees with Nurse Pendleton that Plaintiff has failed to establish that the medical needs with respect to both his back and shoulder injuries were serious.

Nurse Pendleton also argues that Plaintiff has failed to establish the subjective element of her deliberate indifference with respect to both injuries. Here, the record indicates that Plaintiff immediately reported his fall to Sergeant Smith and CO Marbaker, but neither report indicates injuries to Plaintiff's back or shoulder. Further, when Nurse Pendleton was called at home on the day of the fall and told that Plaintiff had injured his ankle, she directed treatment at that time, and subsequently examined him when she returned to work on April 21, 2009. Plaintiff did not articulate injuries to his back or left shoulder at either the April 21, 2009 or April 24, 2009 examinations by Nurse Pendleton.[9] The record also shows that when Plaintiff complained of injuries to his back and shoulder on July 29, 2009 and requested further treatment,

---

[9] Although Plaintiff complained of soreness and stiffness in his shoulder at the time of the April 24, 2009 visit, he did not articulate an actual injury, and Nurse Pendleton noted that he could move his arms well. (Doc. 108 ¶ 13.)

Nurse Pendleton contacted Dr. Russell immediately, and Dr. Russell examined Plaintiff the next day. Moreover, Plaintiff admitted that despite WCCF's Warden and Lieutenant controlling Nurse Pendleton's receipt of medical request forms, when Nurse Pendleton did receive a medical request form from Plaintiff, she provided him with the requested medical care. He also admits that he was receiving pain medication during this time upon his request.

In light of this evidence, the court agrees with Nurse Pendleton that Plaintiff has failed to establish her deliberate indifference with respect to his back and shoulder injuries. First, the record shows that Nurse Pendleton had no notice of Plaintiff's injuries to his back and shoulder until July 29, 2009. Therefore, any significant delay in treating those injuries was not deliberate or intentional on the part of Nurse Pendleton. Second, with respect to the eventual evaluation and treatment of Plaintiff's back and shoulder injuries in July 2009, the record shows that Nurse Pendleton contacted Dr. Russell on the day Plaintiff complained of such injuries in order to schedule an outside evaluation. Additionally, there is nothing in the record indicating that Plaintiff requested further treatment for his back and left shoulder injuries from Nurse Pendleton after his July 30, 2009 evaluation with Dr. Russell. Thus, this is clearly a case where Plaintiff was given medical attention by Nurse Pendleton yet he

remains dissatisfied with the course of treatment and subsequent results. An inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *Lanzaro*, 834 F.2d at 346. Under these circumstances and based on the documented course of treatment set forth on the record, the court finds that Nurse Pendleton was not deliberately indifferent to Plaintiff's medical needs with respect to his back and left shoulder injuries. Therefore, Nurse Pendleton's motion for summary judgment will be granted in her favor.

### B.     Deliberate Indifference Claim Against Dr. Russell

As stated above, remaining at issue here is whether Dr. Russell was deliberately indifferent to Plaintiff's left shoulder injury. Dr. Russell argues that summary judgment should be granted in his favor because Plaintiff has failed to establish that he was suffering from a serious medical need, or that Dr. Russell was deliberately indifferent to that serious medical need. Upon review, the court agrees with Dr. Russell and will grant summary judgment in his favor.

Dr. Russell first argues that Plaintiff has failed to establish that he was suffering from a serious medical need. Here, the record reveals that incident reports and medical request forms received prior to July 29, 2009 did not mention an injury to Plaintiff's left shoulder. When Dr. Russell first saw Plaintiff on July 13, 2009,

Plaintiff did not complain of a left shoulder injury. When he next saw Plaintiff on July 30, 2009, the day after Plaintiff submitted a medical request form regarding a shoulder injury, Dr. Russell noted that Plaintiff complained of a *right* shoulder injury. In fact, he ordered an x-ray of Plaintiff's right shoulder based on Plaintiff's complaints. The x-ray was completed, and Plaintiff never told Dr. Russell that the wrong shoulder had been x-rayed. Further, even though Plaintiff stated in his deposition that he submitted a medical request form in August 2009 about x-rays for his left shoulder, other than this bald assertion, he has produced no evidence of that request.[10] Additionally, the record shows that Plaintiff was able to obtain pain medication when requested, which he only did intermittently. Finally, Plaintiff continued to work as a Block Cleaner after the April 2009 fall without missing any scheduled work. In light of this evidence, the court agrees with Dr. Russell that Plaintiff has failed to establish that the medical needs with respect to his left shoulder injury were serious.

Dr. Russell also argues that Plaintiff has failed to establish his subjective deliberate indifference to Plaintiff's medical needs regarding his left shoulder. Here,

---

[10] Importantly, it has been established that Dr. Russell is informed of the medical needs of inmates through contact with Nurse Pendleton, (Doc. 111 ¶¶ 5, 7), and that Plaintiff concedes that Nurse Pendleton does provide medical care when in receipt of a medical request form, (Doc. 108-1 at 15).

the record reveals that Dr. Russell was never contacted directly by Plaintiff with a request for medical care; rather, those requests were forwarded to him by Nurse Pendleton after she received them from either the Warden or Lieutenant. When Dr. Russell evaluated Plaintiff for his ankle injury on July 13, 2009, Plaintiff did not complain of a left shoulder injury. Further, when Dr. Russell was notified of Plaintiff's complaints on July 29, 2009 by Nurse Pendleton, he examined Plaintiff the next day, July 30, 2009. Dr. Russell's notes show that Plaintiff complained of an injury to his right shoulder rather than his left, and thus an x-ray of the right shoulder was performed. There is nothing in the record showing that Dr. Russell was made aware that the wrong shoulder had been x-rayed prior to the filing of Plaintiff's instant action. Without a showing of a more culpable state of mind, Plaintiff's claim against Dr. Russell here sounds in negligence, not deliberate indifference. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) (medical negligence does not expose a defendant to liability under § 1983). Indeed, "[a]llegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections." *Whooten v. Bussanich*, 248 F. App'x 324, 326 (3d Cir. 2007) (citing *Estelle*, 429 U.S. at 105-06). Therefore, under the circumstances and based on the documented course of treatment set forth on the record, the court finds that Dr. Russell was not deliberately indifferent

to Plaintiff's medical needs with respect to his left shoulder injury.  As a result, Dr.

Russell's motion for summary judgment will be granted in his favor.


**IV.**    **Conclusion**

For the reasons set forth above, Defendants Pendleton and Dr. Russell's

motions for summary judgment will be granted.  As a result, the pretrial conference

and trial scheduled in this case will be cancelled.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  August 20, 2013.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLARENCE J. KIRK,** | : | **CIVIL NO. 1:CV-11-00665** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **DR. RUSSELL and** | : | |
| **NURSE PENDLETON,** | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT**:

1) Defendant Nurse Pendleton's motion for summary judgment (Doc. 106) is

**GRANTED**.

2) Defendant Dr. Russell's motion for summary judgment (Doc. 109) is

**GRANTED**.

3) The Clerk of Court is directed to **ENTER** judgment in favor of Defendants

Pendleton and Russell and against Plaintiff.

4) The motions *in limine* (Docs. 84 & 91) are **DEEMED MOOT**.

5) The pretrial conference and trial scheduled in this case are **CANCELED.**

6) The petition for writ of habeas corpus ad testificandum to produce Plaintiff for trial is **CANCELED**.

7) The Clerk of Court is directed to **CLOSE** this case.

8) It is certified that any appeal from this order will be deemed frivolous and not taken in good faith.

        __s/Sylvia H. Rambo_____
        United States District Judge

Dated:  August 20, 2013.